IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

LARRY ALVAREZ,

       Plaintiff,

       v.

ECOLAB INC., a Delaware Corporation,

       Defendant.

Civ. No. 6:13-cv-01718-MC

OPINION AND ORDER

---

**MCSHANE, Judge:**

Between May 2008 and October 2009, and March 2010 and November 2010, plaintiff Larry Alvarez worked for defendant as a Territory Sales Manager (TM) in territory 10413 (Corvallis territory). On November 1, 2010, plaintiff was electrocuted during a service call. As a result, plaintiff filed a workers' compensation claim and took a paid leave of absence. Plaintiff returned temporarily between April and May 2010, but required an additional leave due to ongoing health concerns relating to his injury. On November 7, 2011, plaintiff obtained a medical release and demanded reinstatement. In a series of responsive letters and telephone conversations, defendant informed plaintiff that his position had been filled, but that he could apply for alternative non-TM positions in the region. Defendant instructed plaintiff he would be terminated on December 12, 2011 if he failed to apply for and obtain an alternative position within the company. After receiving a letter from plaintiff's attorney, defendant offered plaintiff a different TM position in the coastal territory. Plaintiff accepted defendant's offer and worked in that position from January until June 2012.

1 – OPINION AND ORDER

This Court is asked to consider: (1) whether defendant retaliated against plaintiff under ORS § 659A.040(1) and (2) whether defendant violated plaintiff's right to reinstatement under ORS § 659A.043. Because a fuller record will afford a more substantial basis for decision and the existing record supports conflicting material inferences related to pretext under the *McDonnell Douglas*[1] framework, this Court finds that it cannot determine whether defendant violated ORS § 659A.040(1). Because plaintiff's former position as TM in the Corvallis territory was "available" when he demanded reinstatement, this Court finds that defendant violated ORS § 659A.043. Thus, defendant's motion for summary judgment, ECF No. 24, is DENIED, and plaintiff's motion for partial summary judgment, ECF No. 31, is GRANTED IN PART and DENIED IN PART.

## PROCEDURAL AND FACTUAL BACKGROUND

This action arises out of alleged retaliatory actions and a violation of plaintiff's reinstatement right. Plaintiff began working for defendant as a Senior Service Specialist on November 9, 1998. Aff. of Tina A. Syring-Petrocchi 3, 7, 75, ECF No. 28-1. Plaintiff was subsequently promoted to an Account Executive. *Id.* at 3.

Between September 1999 and February 2004, plaintiff filed four workers' compensation claims. *See* Aff. of Joanne Jirik Mullen 2, ECF No. 27-2 (claim for pulled muscle occurring on September 30, 1999); Aff. of Joanne Jirik Mullen 2, ECF No. 27-3 (claim for finger laceration occurring on March 5, 2001); Aff. of Joanne Jirik Mullen 2, ECF No. 27-4 (claim for inhalation of bleach fumes occurring on April 11, 2001); Aff. of Joanne Jirik Mullen 2, ECF No. 27-5 (claim for torn meniscus occurring on February 7, 2004). Plaintiff's injuries occurring in

---

[1] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–805 (1973).

2 – OPINION AND ORDER

September 1999 and February 2004 both resulted in leaves of absence. *Id.* at 2, ECF No. 27-2; *id.* at 2, ECF No. 27-5.

On or about November 1, 2006, plaintiff was terminated because his position had been eliminated. Aff. of Tina A. Syring-Petrocchi 4, 7, ECF No. 28-1.

On March 21, 2007, plaintiff was rehired by defendant as a Territory Sales Manager in Training (TMIT). *Id.* at 5, 72. As a TMIT, plaintiff learned "all aspects of field sales," e.g., equipment installation and vehicle maintenance. *Id.* at 6.

On or about May 2008, plaintiff was promoted to TM in the Corvallis territory.[2] *Id.* at 9–10. As a TM, plaintiff was responsible for selling and servicing customer dishwashing machines within his territory, and was eligible to receive commissions for expanding business within his territory. *Id.* at 9; *id.* at 3, ECF No. 28-4.

On October 24, 2009, plaintiff injured his back while reaching into a dishwasher during a service call. Aff. of Joanne Jirik Mullen 4, ECF No. 27; Aff. of Tina A. Syring-Petrocchi 19, ECF No. 28-1. Plaintiff took a leave of absence, Aff. of Joanne Jirik Mullen 2, ECF No. 27-9, and filed a workers' compensation claim, Aff. of Joanne Jirik Mullen 2, ECF No. 27-10. However, this claim was denied by defendant's insurance carrier, Aff. of Joanne Jirik Mullen 2, ECF No. 27-11, and plaintiff withdrew his appeal with the Oregon Workers' Compensation Board, Aff. of Tina A. Syring-Petrocchi 19–21, ECF No. 28-1.

On March 29, 2010, plaintiff returned to work as TM in the Corvallis territory. Aff. of Joanne Jirik Mullen 2, ECF No. 27-12; *see also* Aff. of Tina A. Syring-Petrocchi 21, ECF No. 28-1.

---

[2] Most of plaintiff's accounts in this territory were along the interstate 5 corridor, extending as far as Corvallis and Sweet Home. Decl. of Pl. 2, ECF No. 34; *see also* Decl. of Counsel 2, ECF No. 33-3 (color-coded map identifying Corvallis territory customers in red).

3 – OPINION AND ORDER

On November 1, 2010, plaintiff was electrocuted while servicing a customer's equipment during a service call. Aff. of Tina A. Syring-Petrocchi 22–23, ECF No. 28-1. Plaintiff was transported via ambulance to the emergency room and hospitalized for approximately six hours. *Id.* at 23–24. The following day, plaintiff filed a workers' compensation claim and went on medical leave. Aff. of Joanne Jirik Mullen 5, ECF No. 27; Aff. of Joanne Jirik Mullen 2, ECF No. 27-13.

On April 1, 2011, plaintiff returned to work as TM in the Corvallis territory. *Id.* at 6, ECF No. 27; *id.* at 2, ECF No. 27-16. On May 10, 2011, plaintiff returned to medical leave because of ongoing concerns relating to his electrocution. *See id.* at 6, ECF No. 27; *id.* at 2, ECF No. 27-17.

In June 2011, defendant promoted Scott Henderson to TM and assigned him the Corvallis territory. *See* Aff. of Tina A. Syring-Petrocchi 10–13, ECF No. 28-4; Aff. of Tina A. Syring-Petrocchi 1–5, ECF No. 28-5; Decl. of Counsel 7, 21, ECF No. 33-3.

On November 7, 2011, plaintiff informed defendant that he had obtained a medical release to return to regular duty and demanded reinstatement. Decl. of Counsel 5–7, ECF No. 33-3; Decl. of Pl. 2, ECF No. 34.[3] In response, defendant informed plaintiff that his position had been filled and that there were no open TM territories in the region. Aff. of Tina A. Syring-Petrocchi 37–39, ECF No. 28-1.

In a letter dated November 14, 2011, defendant confirmed receipt of plaintiff's medical release, but reiterated that it did "not have a current opening in the area in which you are located." Decl. of Counsel 16, ECF No. 33-3. That letter further provided, in relevant part:

> Enclosed you will find a list of open positions within Oregon. More
> information about these positions and how to apply can be found on our

---

[3] Defendant was aware that plaintiff would likely be released to regular duty on November 7, 2011. *See* Decl. of Counsel 4, ECF No. 33-3 (In an email dated October 21, 2011, defendant was informed that plaintiff would likely be released to regular duty on November 7, 2011).

4 – OPINION AND ORDER

website at www.ecolab.com/careers. You may also contact me directly to discuss potential opportunities. If you identify a position that would require you to relocate, any such costs would be at your own expense. If you are interested and meet the qualifications, please apply for the open position(s) as directed on the job listing and then please let me know which one(s) are of interest to you.[4]

In the event you do not identify other positions for which you wish to apply, you will be eligible for severance benefits per the Ecolab severance plan. Information regarding severance options will be mailed to you at a later date.

*Id.*

 In a three-page letter dated November 30, 2011, plaintiff received a severance and release notice. That letter provided, in part: "[a]s we discussed, there are no available positions within your geographic location. Your separation date will be December 12, 2011. This letter explains your severance pay and separation benefits." *Id.* at 13–15.

 In a one-page letter dated December 15, 2011, plaintiff received notice that his potential release of claims benefits had been downwardly modified from 10.5 weeks to 6.5 weeks. *Id.* at 12. Plaintiff was given twenty-one days to sign the enclosed release. *Id.*; *see also* Aff. of Tina A. Syring-Petrocchi 90–93, ECF No. 28-1 (release of claims form).

 On December 16, 2011, plaintiff's attorney, Larry Linder, faxed defendant a letter identifying and invoking plaintiff's right to reinstatement under ORS § 659A.043(1). Decl. of Counsel 8–11, ECF No. 33-3.

 On or about December 17, 2011, Jowita Haugen, defendant's Interim Human Resources Representative, contacted plaintiff and informed him that a TM position had become available, but details would be forthcoming. Aff. of Tina A. Syring-Petrocchi 47, ECF No. 28-1.

---

[4] The letter dated November 14, 2011 also included an additional page of job listings. Aff. of Tina A. Syring-Petrocchi 89, ECF No. 28-1.

5 – OPINION AND ORDER

On or about December 19, 2011, Haugen notified plaintiff that she would send him an offer letter with more information on the TM position. *Id.* at 49.

In a letter dated December 22, 2011, Haugen followed up regarding plaintiff's employment status. Aff. of Joanne Jirik Mullen 2, ECF No. 27-19. Defendant notified plaintiff "[a]t this time, we have a [TM] position open and available to you in the Portland district. Please contact me as soon as possible, so we can discuss the details of your reinstatement to work." *Id.*; *see also id.* at 6, ECF No. 27.

In a letter dated December 28, 2011, Tony Bornia, defendant's district manager, confirmed the earlier "offer to [plaintiff] for the position of Territory Manager, Portland effective January 1, 2012." Aff. of Tina A. Syring-Petrocchi 99, ECF No. 28-1.

Plaintiff accepted this offer, and on January 11, 2012, began working as TM in the coastal territory. *Id.* at 52–53, ECF No. 28-1. As TM in the coastal territory, plaintiff "travel[ed] up and down the [Oregon] coast, going as far south as Yachats, and continuing to service accounts as far north as McMinnville or Dundee." Decl. of Pl. 2, ECF No. 34; *see also* Decl. of Counsel 2, ECF No. 33-3 (color-coded map identifying coastal territory customers in blue).

On March 20, 2012, defendant paid plaintiff $5,653.00 for the seven-week period extending from November 7, 2011 to December 26, 2011. Aff. of Tina A. Syring-Petrocchi 58, ECF No. 28-1.

In June 2012, plaintiff again returned to medical leave because of ongoing concerns relating to his electrocution. *Id.* at 70–71.

On February 28, 2013, plaintiff returned to work as a TM, but in the Beaverton territory. *Id.* at 71. Plaintiff described the Beaverton territory as "Tigard, Tualtin, the 205 corridor down to Clackamas, and then out to Estacada" *Id.* at 65.

6 – OPINION AND ORDER

On or about November 2013, plaintiff went on medical leave because of an unrelated eye condition. *Id.* at 67–68. Plaintiff remains on medical leave at this time. *Id.* at 67.

## STANDARD OF REVIEW

This Court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). An issue is "genuine" if a reasonable jury could return a verdict in favor of the non-moving party. *Rivera v. Phillip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is "material" if it could affect the outcome of the case. *Id.* The court reviews evidence and draws inferences in the light most favorable to the non-moving party. *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 988 (9th Cir. 2006) (quoting *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999)). When the moving party has met its burden, the non-moving party must present "specific facts showing that there is a *genuine issue for trial.*" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (quoting Fed. R. Civ. P. 56(e)) (emphasis in original).

## DISCUSSION

Plaintiff, in his complaint, contends that: (1) defendant retaliated against him under ORS § 659A.040 because he filed for workers' compensation and (2) defendant violated his right to reinstatement under ORS § 659A.043 by failing to reinstate him to his former "available" position. Plaintiff and defendant move for summary judgment as to both claims.

## I. ORS § 659A.040 (Workers' Compensation Retaliation)

Under ORS § 659A.040(1), "[i]t is an unlawful employment practice for an employer to discriminate against a worker with respect to hire or tenure or any term or condition of

employment because the worker has applied for benefits or invoked[5] or utilized the procedures provided for in ORS chapter 656 or has given testimony under the provisions of those laws." To establish a prima facie case under ORS § 659A.040(1), a plaintiff must show: "(1) that the plaintiff invoked the workers' compensation system; (2) that the plaintiff was discriminated against in the tenure or conditions of employment; and (3) that the employer discriminated against the plaintiff in the tenure or terms of employment because he or she invoked the workers' compensation system." *Kirkwood v. W. Hyway Oil Co.*, 204 Or. App. 287, 293 (2006) (citation and internal quotation marks omitted). A plaintiff may rely on circumstantial evidence in establishing his prima facie case. *See, e.g.*, *Herbert v. Altimeter, Inc.*, 230 Or. App. 715, 725 (2009).

The parties dispute whether the *McDonnell Douglas* burden-shifting framework applies to plaintiff's claim under ORS § 659A.040(1). In Oregon, various courts have explicitly rejected application of the *McDonnell Douglas* framework. *See, e.g.*, *Williams v. Freightliner, LLC*, 196 Or. App. 83, 90 (2004) ("[T]he trial court applied a burden-shifting analysis. And as the authorities set out above make clear, that was error."); *Arnold v. Pfizer, Inc.*, 970 F. Supp. 2d 1106, 1142–43 (D. Or. 2013) (declining to apply *McDonnell Douglas*). However, as discussed at length in *Snead v. Metropolitan Property & Casualty Insurance Co.*, 237 F.3d 1080, 1090 (9th Cir. 2001) (citation and internal quotation marks omitted), a court sitting in diversity jurisdiction applies "state substantive law and federal procedural law." The Ninth Circuit, in declining to apply "Oregon's 'prima facie only' rule," held that "the *McDonnell Douglas* burden-shifting scheme is federal procedural law." *Snead*, 237 F.3d at 1092; *see also Anderson v. Hibu, Inc.*, ___

---

[5] OAR 839-006-0105(7) defines "invoke" as "includ[ing], but not limited to, a worker's reporting of an on-the-job injury or a perception by the employer that the worker has been injured on the job or will report an injury."

8 – OPINION AND ORDER

F. Supp. 2d ___, 2014 WL 2619641, at *4 (D. Or. June 12, 2014) (applying *McDonnell Douglas*); *Grassmueck v. Johnson Controls Battery Grp., Inc.*, Civil No. 06-526-ST, 2007 WL 1989579, at *7 (D. Or. July 2, 2007) (same). Thus, this Court, sitting in diversity jurisdiction, applies the *McDonnell Douglas* framework.

Under the *McDonnell Douglas* framework, if a plaintiff meets his or her initial prima facie burden identified above, "[t]he burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason for the" adverse employment action. *McDonnell Douglas Corp.*, 411 U.S. at 802. If defendant meets this burden, then the burden returns to plaintiff to show that the alleged legitimate, nondiscriminatory reason for the adverse employment action is merely a pretext for discrimination. *Id.* at 804; *Ballard v. Tri-Cnty. Metro. Transp. Dist. of Or.*, Cv. No. 09–873–PK, 2011 WL 1337090, at *14 (D. Or. Apr. 7, 2011).

As to plaintiff's prima facie burden, the parties only dispute whether plaintiff met his burden under the second and third elements. *See* Def.'s Mem. Supp. Summ. J. 27, ECF No. 25; Pl.'s Mem. Resp. Summ. J. 15–16, ECF No. 37. As a result, this Court focuses on those elements.

As to the second element, neither party interprets "with respect to hire or tenure or any term or condition of employment." This Court, in reliance on *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 61–67 (2006), finds that ORS § 659A.040(1) is more akin to an anti-retaliation provision than a substantive anti-discrimination provision because it "seeks to prevent harm to individuals based on what they do, *i.e.*, their *conduct*," not based "on who they are, *i.e.*, their *status*." *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 63 (emphasis added); *see also Davis v. Tri-Cnty. Metro. Transp. Dist. of Or.*, Case No. 3:12-cv-0808-SI, 2014 WL 4425815, at *14 (D. Or. Sept. 8, 2014) (concluding that "O.R.S. § 659A.040 is substantively an antiretaliation

9 – OPINION AND ORDER

statute"); *Anderson*, 2014 WL 2619641, at *4 (same).[6] However, as indicated in *Kirkwood*, 204 Or. App. at 293, and by other Courts in this district, *e.g.*, *Davis*, 2014 WL 4425815, at *15, ORS § 659A.040(1) prohibits *specific* types of retaliation; retaliation "with respect to hire or tenure or any term or condition of employment." As a result, plaintiff must show that a reasonable employee would have found the challenged action—employment action with respect to hire or tenure or any term or condition of employment[7]—materially adverse, which in this context means it well might have dissuaded a reasonable worker from applying for benefits or invoking the procedures provided for in ORS chapter 656. *Id.* at 68; *cf. Herbert*, 230 Or. at 722 (noting that a plaintiff's prima facie burden "is so minimal that it is virtually impervious to a motion based on evidentiary sufficiency" (citation and internal quotation marks omitted)).

As to the third element, plaintiff must demonstrate that the defendant discriminated against him with respect to tenure or any term or condition of employment *because he invoked the workers' compensation system*. Put differently, plaintiff's invocation "of the workers' compensation system was a *substantial factor* in defendant's" adverse employment action. *Herbert*, 230 Or. App. at 726 (emphasis added). "[T]he employer's wrongful purpose must have been a factor that made a difference in the adverse employment action." *Estes v. Lewis & Clark Coll.*, 152 Or. App. 372, 381 (1998) (citation and internal quotation marks omitted).

---

[6] *Cf. Hamlin v. Hampton Lumber Mills, Inc.*, 349 Or. 526, 530 n.2 (2011) (identifying plaintiff's claim for relief against defendant as "*retaliating* against him for filing a workers' compensation claim (ORS 659A.040)" (emphasis added)); *Petock v. Asante*, 237 Or. App. 113, 116 n. 1 (2010) (describing plaintiff's claim as "*retaliatory* discharge" (emphasis added)); *Herbert*, 230 Or. App. at 725 (discussing "plaintiff's count concerning workers' compensation *retaliation.*" (emphasis added) (citation omitted)).

[7] This Court declines to define the parameters of protected conduct under ORS § 659A.040(1). Defendant's alleged adverse employment action—termination and violation of plaintiff's right to reinstatement—is directly related to plaintiff's *employment* and occurred *within* the workplace.

Plaintiff asserts two acts of alleged adverse employment action: (1) refusal to reinstate on or about November 7, 2011 and (2) attempted termination on December 12, 2011. Pl.'s Mem. Supp. Summ. J. 12–13, ECF No. 32.[8]

As discussed more thoroughly *infra* § II, defendant violated ORS § 659A.043(1) by failing to reinstate plaintiff to his former position, which was TM in the *Corvallis* territory. Defendant's failure to reinstate constitutes a material adverse employment action because such a failure might have dissuaded a reasonable worker from applying for benefits or invoking the procedures provided for in ORS chapter 656. *See Palmer v. Cent. Or. Irrigation Dist.*, 91 Or. App. 132, 136–37 (1988) ("[F]ailure to reinstate a worker who has sought benefits can be discriminatory, even if the refusal to reinstate does not violate ORS 659.415.").[9] To meet plaintiff's prima facie burden, plaintiff's invocation of the workers' compensation system need also have been a *substantial factor* in defendant's violation of ORS § 659A.043(1).

To satisfy this causal connection requirement, plaintiff relies heavily on the temporal proximity between his medical release and his demand for reinstatement, both occurring on November 7, 2011. In this district, there is some disagreement as to whether temporal proximity *alone* is sufficient to support an inference of retaliatory motive under ORS § 659A.043(1). *Compare Duke v. F.M.K. Constr. Servs., Inc.*, 739 F. Supp. 2d 1296, 1302 (D. Or. 2010) (concluding that temporal proximity alone did not create a genuine factual issue of discrimination), *with Looney v. Wash. Cnty., Or.*, Civil No. 09-1139-HA, 2011 WL 2712982 at *6 (D. Or. July 13, 2011) (concluding that plaintiff met the causation requirement by "referenc[ing] the proximity between plaintiff's application for workers' compensation benefits .

---

[8] This Court declines to discuss plaintiff's attempted termination on December 12, 2011 as an *independent* adverse employment action. Plaintiff's attempted termination is so intertwined with defendant's violation of plaintiff's right to reinstatement that any additional analysis would be duplicative.

[9] ORS § 659.415 was renumbered ORS § 659A.043 in 2001.

. . and his termination"). Those decisions that reject reliance on temporal proximity alone

generally rely on language in *Ledesma v. Freightliner Corp.*, 97 Or. App. 379, 383 (1989). *E.g.*,

*Kelly v. Ironwood Commc'ns Inc.*, No. CV 08-3058-CL, 2009 WL 3497811, at *4 (Oct. 29,

2009).

     In *Ledesma*, the Court concluded that plaintiff did not meet his prima facie causal

connection burden under ORS § 659.410.[10] The Court provided:

> The facts show that plaintiff worked for defendant and that he was fired
> after he had applied for workers' compensation benefits. Apparently,
> according to plaintiff, all he need show to recover under ORS 659.410 is
> that he filed a workers' compensation claim and that he was discharged
> sometime thereafter. That is not the law.

97 Or. App. at 382–83. This language can clearly be interpreted to support the premise

articulated in *Duke* that temporal proximity alone is insufficient. *See also Palmer*, 91 Or. App. at

136 (concluding that a violation of the reinstatement statute "does not *ipso facto* establish a

discriminatory motive"). Yet, if *Lesdma* is limited to its factual circumstances—a five month

interval between plaintiff's workers' compensation filing and termination—then it can also be

interpreted to support the federal retaliation case law that allows causation to be inferred from

timing alone. *See Villiarimo v. Aloha I. Air, Inc.*, 281 F.3d 1054, 1065 (9th Cir. 2002)

("[C]ausation can be inferred from timing alone where an adverse employment action follows on

the heels of protected activity." (citation omitted)); *see also Filipovic v. K & R Express Sys., Inc.*,

176 F.3d 390, 399 (7th Cir. 1999) (concluding that a four-month interval was insufficient under

Title VII without "any direct evidence of causal connection" and especially in light of an

arbitrator's finding that defendant had just cause for disciplinary action). This Court, in light of

the factual circumstances before it, declines to preclude reliance on temporal proximity *alone* as

---

[10] ORS § 659.410 was renumbered ORS § 659A.109 in 2001.

12 – OPINION AND ORDER

a matter of law. Having made that decision, this Court also notes that more recent case law in Oregon explicitly considers temporal proximity among *other* factors. *See Herbert*, 230 Or. App. at 725 (considering temporal proximity in concluding that "[a] jury could reasonably have found that plaintiff's decision to report an unsafe work environment was a substantial factor in her termination"); *Kirkwood*, 204 Or. App. at 294 (considering temporal proximity in concluding that a reasonable factfinder could infer discriminatory motive).

Plaintiff's right to reinstatement was violated upon its invocation, on or about November 7, 2011. *See infra* § II. However, this Court is unable to determine *when (or if)* plaintiff stopped utilizing the procedures provided for in ORS Chapter 656 based upon the record before it. Presumably, plaintiff continued to utilize the procedures provided for in ORS Chapter 656 following his submission of a workers' compensation claim on November 2, 2010. *See* Aff. of Joanne Jirik Mullen 2, ECF No. 27-16 (indicating that plaintiff received pay during his leave of absence between November 1, 2010 and April 1, 2011); Decl. of Larry Linder 1–4, ECF No. 41-1 (medical follow up examination dated May 10, 2011); Aff. of Joanne Jirik Mullen 2, ECF No. 27-18 (indicating that plaintiff received pay during his leave of absence between May 10, 2011 and June 5, 2011, but transitioned into to an unpaid long term disability leave of absence on June 6, 2011); Aff. of Tina A. Syring-Petrocchi 70–71, ECF No. 28-1 (indicating that plaintiff took an additional medical leave in June 2012 because of ongoing concerns relating to his electrocution.); *see also* Decl. of Counsel 7, ECF No. 33-3 (defendant's timeline of events between October 24, 2009 and November 30, 2011). If so, then the length of the interval separating plaintiff's utilization of the procedures provided for in ORS Chapter 656 and defendant's violation of ORS § 659A.043(1) may lend greater support to an inference of retaliatory motive. *See Kirkwood*, 204 App. at 294 (emphasizing that plaintiff's workers'

13 – OPINION AND ORDER

compensation claim "did not *close* until January 2001" (emphasis added)); *see also Tweelinckx v. United Parcel Serv.*, Civil No. 3:12-cv-01328-JE, 2014 WL 5148443, at *10 (D. Or. July 29, 2014) (Jelderks, Mag. J.) (noting that "the evidence shows that Plaintiff's claim was ongoing in both its procedural progress and in the manifestations and exacerbations of Plaintiff's injuries"), *rev'd in part on other grounds*, 2014 WL 5148439 (D. Or. Oct. 14, 2014) (Mosman, J.).

In addition to this temporal proximity aspect, plaintiff also relies on the deposition testimony of various Ecolab employees. Henderson, plaintiff's replacement as TM in the Corvallis territory, indicated that the four or five associates responsible for caretaking[11] portions of the Corvallis territory during plaintiff's medical leave complained about the additional work. *See* Decl. of Counsel 3, 8–9, ECF No. 33-2. Henderson also indicated that Bornia, defendant's district manager, was frustrated and apologized to the caretaking associates for their additional responsibilities during a subsequent leave of absence. *Id.* at 12. Amber Manning, defendant's Human Resources Representative, noted that defendant had received complaints from various customers because of perceived declines in the level of customer service during plaintiff's absence. *See* Aff. of Tina A. Syring-Petrocchi 4, ECF No. 28-3.

The circumstances surrounding defendant's response to plaintiff's workers' compensation related injury also lend support to a discriminatory inference. First, internal correspondence between defendant and defendant's workers' compensation insurance carrier indicated that defendant declined to take any action relating to plaintiff's continued employment between October 21, 2011 and November 7, 2011, despite notice that plaintiff would likely be released to full work duty on November 7, 2011. Decl. of Counsel 3–4, ECF No. 33-3. Second,

---

[11] Caretaking "means that various associates will manage a percentage of the business in 10 percent portions, split up between four to five associates." Decl. of Counsel 4, ECF No. 33-1.

Haugen, defendant's Interim Human Resources Representative, destroyed handwritten notes taken sometime in late November or early December 2011 that included details relating to plaintiff's workers' compensation claim. *Id.* at 19, 21–23, ECF No. 33-1. Third, defendant did not notify plaintiff until *after* communication with plaintiff's attorney that a TM position had become available in the Portland metropolitan area. *Id.* at 11, ECF No. 33-3.

 Combined, these facts suffice to raise an inference of discrimination. A jury could infer, based upon this record, that defendant's failure to reinstate plaintiff was motivated at least in part by plaintiff's invocation of the worker's compensation system. This finding is consistent with plaintiff's *minimal* burden at this stage in the proceeding. *See Herbert*, 230 Or. App. at 722 ("[P]laintiff's prima facie burden in an employment discrimination case is so minimal that it is virtually impervious to a motion based on evidentiary sufficiency." (citation and internal quotation marks omitted)); *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994) ("The amount [of evidence] that must be produced in order to create a *prima facie* case is very little." (citations and internal quotation marks omitted)).

 Defendant argues that regardless of whether plaintiff met his prima facie burden, its "Time Off/Leave of Absence" policy constitutes a legitimate, nondiscriminatory reason for its adverse employment action. That policy provides, in relevant part:

> Ecolab will make reasonable efforts to reinstate employees returning from medical leave into positions of equal status and pay, but re-employment is not guaranteed. Re-employment is dependent on the length of the leave, whether the date of return is definite or indefinite, successful recovery or rehabilitation from the disability and availability of a position. An individualized analysis will be reviewed for each situation.

Aff. of Joanne Jirik Mullen 3, ECF No. 27-1. Defendant, having received various complaints from its employees and customers, decided to fill the vacant position in order to better service its

15 – OPINION AND ORDER

existing customers. A jury could reasonably infer that such a decision constitutes a legitimate, non-discriminatory reason for defendant's violation of plaintiff's right to reinstatement.

Plaintiff, to meet his rebuttal burden, argues that the surrounding circumstances demonstrate that this neutral "individualized" policy is mere pretext. This Court, having considered the factual circumstances identified above, finds that plaintiff has established a triable issue of fact as to pretext because there is a nexus sufficient for purposes of summary judgment, albeit a tenuous one.

Accordingly, this Court DENIES summary judgment on plaintiff's claim under ORS § 659A.040(1) and finds that the better course would be to proceed to a full trial because a fuller record will afford a more substantial basis for decision. *See Anderson*, 477 U.S. at 255 ("Neither do we suggest that . . . the trial court may not deny summary judgment in a case where there is reason to believe that the better course would be to proceed to a full trial." (citation omitted)).

## II. ORS § 659A.043 (Reinstatement)

The parties dispute whether plaintiff's former position was "available" under ORS § 659A.043(1). *See* Def.'s Mem. Supp. Summ. J. 22–24, ECF No. 25; Pl.'s Resp. Summ. J. 7–12, ECF No. 37. The issue before this Court is whether, consistent with ORS § 659A.043(1), an employee's right to reinstatement is violated if he or she is given a similar, but not identical employment position, when his or her former position has been filled by another employee.

Defendant, in reliance on *Knapp v. City of North Bend*, 304 Or. 34, 37 (1987) (en banc), contends that a former position is available "only where that position is existing and vacant." Def.'s Mem. Supp. Summ. J. 23–24, ECF No. 25. Plaintiff, in reliance on statutory changes to ORS § 659.415, the predecessor to ORS § 659A.043, argues that *Knapp*'s interpretation of

16 – OPINION AND ORDER

"available" does not apply to this case. Pl.'s Reply Supp. Summ. J. 7, ECF No. 42. This Court

looks to *Knapp*.

In *Knapp*, 304 Or. at 37, the Oregon Supreme Court interpreted ORS § 659.415 to

determine "whether an employer must reinstate a worker, who has sustained a compensable

injury, to his or her former position, upon the worker's demand for reinstatement, when the

position the worker formerly occupied still exists but no longer is vacant." The Court concluded,

in reliance on an administrative rule promulgated by the Oregon Bureau of Labor and Industries

(BOLI) and the legislature's inclusion of the term "available" in a 1981 amendment to ORS §

659.415, that reinstatement to a former position is only required if the "former position still

exists and is vacant." *Knapp*, 304 Or. at 42.

At the time *Knapp* was decided, the 1981 iteration of ORS § 659.415(1) provided, in

relevant part:

> A worker who has sustained a compensable injury and is disabled from
> performing the duties of the worker's former regular employment shall,
> upon demand, be reemployed by the worker's employer at employment
> which is available and suitable.

*Knapp*, 304 Or. at 41 n. 3.

In 1989, ORS § 659.415(1) was amended. That iteration provided:

> A worker who has sustained, a compensable injury shall be reinstated by
> the worker's employer to the worker's former position of employment
> upon demand for such reinstatement, provided that the position is
> available and the worker is not disabled from performing the duties of
> such position. If the former position is not available, the worker shall be
> reinstated in any other position which is available and suitable. A
> certificate by a duly licensed physician that, the physician approves the
> worker's return to the worker's regular employment shall be prima facie
> evidence that the worker is able to perform such duties.

Decl. of Counsel 6, ECF No. 38-1.

17 – OPINION AND ORDER

In 1990, ORS § 659.415(1) was again amended. That iteration provided:

> A worker who has sustained a compensable injury shall be reinstated by the worker's employer to the worker's former position of employment upon demand for such reinstatement, if the position exists and is available and the worker is not disabled from performing the duties of such position. *A worker's former position is "available" even if that position has been filled by a replacement while the injured worker was absent.* If the former position is not available, the worker shall be reinstated in any other existing position which is vacant and suitable. A certificate by the attending physician that the physician approves the worker's return to the worker's regular employment or other suitable employment shall be prima facie evidence that the worker is able to perform such duties.

*Id.* at 8–9 (emphasis added). This amendment was considered "a major change in existing law." Decl. of Counsel 12, ECF No. 38-1 (quoting Ross Dwinnell, a representative from United Grocers, discussing Senate Bill 1198). For example, during a May 3, 1990 meeting of the Special Committee on Workers' Compensation, attorney David Force briefly identified *Knapp*'s definition of reinstatement, "vacant and available," and then noted that "Labor says [Senate Bill 1198] is an important bill because of restoration of reinstatement in cases where the position has been filled . . . ." *Id.* at 13. The 1990 iteration of ORS § 659.415(1) is nearly identical to ORS § 659A.043(1).[12]

---

[12] The modern iteration of ORS § 659A.043(1), effective January 1, 2008, provides:

> (1) A worker who has sustained a compensable injury shall be reinstated by the worker's employer to the worker's former position of employment upon demand for such reinstatement, if the position exists and is available and the worker is not disabled from performing the duties of such position. *A worker's former position is available even if that position has been filled by a replacement while the injured worker was absent.* If the former position is not available, the worker shall be reinstated in any other existing position that is vacant and suitable. A certificate by the attending physician or a nurse practitioner authorized to provide compensable medical services under ORS 656.245 that the physician or nurse practitioner approves the worker's return to the worker's regular employment or other suitable employment shall be prima facie evidence that the worker is able to perform such duties.

(emphasis added).

18 – OPINION AND ORDER

Defendant, instead of discussing statutory changes to ORS § 659.415(1),[13] broadly asserts that *Knapp* remains controlling because it has "been favorably cited at least twelve (12) times by Oregon State courts." Def.'s Reply in Supp. of Mot. Summ. J. 7, ECF No. 40. Upon closer inspection, those cases that cite *Knapp* for its interpretation of "available" under ORS § 659.415(1), rather than its *principles of statutory construction, e.g.*, *SAIF Corp. v. Drury*, 202 Or. App. 14, 23 (2005), all pre-date the 1990 amendment, *see Chavez v. Boise Cascade Corp.*, 92 Or. App. 508, 511 n. 3 (1988); *Palmer*, 91 Or. App. at 134; *Janzen v. Sunriver Lands, Inc.*, 89 Or. App. 51, 53 (1987). Because *Knapp* is not dispositive, this Court looks to ORS § 659A.043 and OAR 839-006-0130. *Cf. Knapp*, 304 Or. at 39 ("The Court of Appeals correctly concluded that *Shaw* is not dispositive. That case interpreted the pre-1981 version of ORS 659(1) three years after 1981, when the language at issue here was added to the statute.").

ORS § 659A.043(1) requires an employer to reinstate a worker to his or her "former position upon demand for such reinstatement, if the position exists and is available . . . . A worker's former position is available even if that position has been filled by a replacement while the injured worker was absent." BOLI, the agency charged with enforcement and administration of ORS § 659A.043(1), promulgated OAR 839-006-0130, which defines "available" for the purposes of ORS § 659A.043(1), as follows:

> (1) An employer with 21 or more employees at the time of a worker's on-the-job injury or at the time an injured worker demands reinstatement to the former position must reinstate the worker to the worker's former position if:
>
> . . .

---

[13] Defendant used ellipses multiple times to *omit* the sentence describing "available" in ORS § 659A.043(1). *E.g.*, Def.'s Resp. to Summ. J. 7, ECF No. 39.

19 – OPINION AND ORDER

> (b) The injured worker's former position is available. A worker's former position is "available" even if that position has been filled by a replacement worker while the injured worker was absent and regardless of the employer's possible preference for the replacement worker . . . .

This BOLI definition, "although not binding, is entitled to [this Court's] careful consideration." *Knapp*, 304 Or. at 41.

In light of the plain language of the statute and guiding administrative rule, defendant's reliance on *Knapp*'s interpretation of "available" is untenable. *See Portland Gen. Elec. Co. v. Bureau of Labor & Indus.*, 317 Or. 606, 611 (1993), *superseded by statute on other grounds,* ORS § 174.020, *as recognized in State v. Gaines*, 346 Or. 160, 171–72 (2009) ("[T]he text of the statutory provision itself is the starting point for interpretation and is the best evidence of the legislature's intent."). Plaintiff sustained a compensable injury on November 1, 2010. Aff. of Joanne Kirik Mulen 5, ECF No. 27; Decl. of Pl. 1, ECF No. 34. On or about November 7, 2011, plaintiff received medical clearance and demanded reinstatement to his former position of employment, i.e., TM in the Corvallis territory. Decl. of Pl. 1–2, ECF No. 34. At that time, plaintiff's former position existed, but had been filled during plaintiff's absence by another employee. Decl. of Pl.'s Counsel 2, 4–5, 8, ECF No. 33-2. Regardless of defendant's "preference for the replacement worker," OAR 839-006-0130, plaintiff was entitled to reinstatement because his position remained available "even [though] that position had been filled by a replacement while [plaintiff] was absent," ORS § 659A.043(1). Rather than place plaintiff in his former position as TM in the Corvallis territory, plaintiff was placed as TM in the coastal territory on or about December 26, 2011.

Defendant argues that plaintiff's placement as TM in the coastal territory constitutes *reinstatement* under ORS § 659A.043(1). Neither ORS § 659A.043(1) nor OAR 839-006-0130

20 – OPINION AND ORDER

define "reinstate," "position," or "former." The verb "reinstate" is defined as "[t]o restore to a previous condition or position." The American Heritage Dictionary of the English Language 1472 (4th ed. 2000); *see also Anderson*, 2014 WL 2619641, at *9 (defining "reinstate" as a "right to be restored to [a] former (available) position"). The noun "position" is defined as "[a] post of employment; a job." The American Heritage Dictionary of the English Language 1362 (4th ed. 2000); *see also* The Oxford English Dictionary vol. XII, 165 (2d ed. 2001) ("An official situation, place, or employment."). The adjective "former" is defined as "[o]f, relating to, or taking place in the past." The American Heritage Dictionary of the English Language 691 (4th ed. 2000); *see also* The Oxford English Dictionary vol. XI, 87 (2d ed. 2001) ("Earlier in time . . . . Pertaining to the past, or to a period or occasion anterior to that in question."). Collectively, these definitions require defendant to restore plaintiff to his previous post of employment.

Plaintiff's position as TM in the coastal territory, although similar in many respects to his previous position as TM in the Corvallis territory, was not reinstatement in "his previous post of employment." Plaintiff's coastal territory position included a *different* geographic scope and a *different* customer base. Decl. of Pl. 2, ECF No. 34. Because of these differences, plaintiff incurred greater travel expenses, worked more hours, and faced different obstacles in securing potential commissions. *Id.* at 2–3. Had plaintiff's former position been "not available," then plaintiff's placement as TM in the coastal territory would likely have complied with ORS § 659A.043(1), as reinstatement in a vacant and suitable position. However, as indicated above, merely filling plaintiff's TM position in the Corvallis territory during his absence did not affect the availability of that position for reinstatement. ORS § 659A.043(1). Per statute, plaintiff was entitled to reinstatement in *that* position.

21 – OPINION AND ORDER

Accordingly, plaintiff is GRANTED summary judgment as to his claim under ORS § 659A.043(1)

## **CONCLUSION**

For these reasons, defendant's motion for summary judgment, ECF No. 24, is DENIED, and plaintiff's motion for partial summary judgment, ECF No. 31, is GRANTED IN PART and DENIED IN PART.


IT IS SO ORDERED.


DATED this 25th day of November, 2014.


**Michael J. McShane**
**United States District Judge**